UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO.

WILLIAM NALL
on behalf of himself and
similarly situated employees

    Plaintiff,

vs.

ACORN CONSTRUCTION, INC.,
PAYROLL MANAGEMENT, INC.
and LESLIE WHITE

    Defendants
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, William Nall ("Nall") on behalf of himself and similarly situated employees, sues Defendants, Acorn Construction, Inc. ("Acorn"), Payroll Management, Inc. ("PMI") and Leslie White ("White") and states as follows:

### Jurisdiction

1. This is an action for damages which exceeds $15,000.00 exclusive of attorneys' fees, interest and costs.

2. Venue is proper in Okaloosa County County, Florida since the Defendants do business in Okaloosa County and since all of the claims accrued in Okaloosa County, Florida.

### The Parties/Participants

3. Nall is an individual and is *sui juris*. Nall was at all material times hereto an employee of Acorn and PMI.

4. Defendants do business in Okaloosa County and at all times material hereto had material control over the terms of the employment of Nall.

## General Allegations

5. This is an action seeking recovery of unpaid overtime compensation owed to Plaintiff and similarly situated employees, pursuant to the Fair Labor Standards Act, 29 U.S.C. Section 201, *et. seq*, as amended.

6. At all times material hereto, Plaintiff was and is a residents of the State of Florida and was employed by Defendant.

7. At all times material hereto, Defendant was doing business in the State of Florida and was regularly engaged in activities that involved interstate commerce. Moreover, at all times material hereto, each Defendants had annual gross sales or business in an amount not less than $500,000.00. By reason of the foregoing, each Defendant was and is an "employer" within the meaning of Section 3(d) of the FLSA.

8. On many occasions throughout his employment with Defendants, Plaintiff worked in excess of forty hours per week and was not paid overtime.

9. Moreover, on or about December 16, 2013, Nall entered into an Employment Agreement ("Agreement") with Acorn, a copy of which is attached hereto as Exhibit "A." The Agreement provided that upon termination, Nall was to be paid three months salary, which was never paid by Acorn.

10. Plaintiffs has retained the undersigned law firm in this matter and has agreed to pay it a reasonable fee for its services.

## Count I-FLSA
## (Overtime Compensation)(as to All Defendants)

11.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 10 by reference.

12.     In several workweeks during the relevant period, Plaintiff, worked, in excess for forty(40) hours per week for Defendant.  In these workweeks, Plaintiff, was not paid overtime compensation as is required by Section 207 of the FLSA.

13.     As a direct and proximate result of Defendants failure to pay overtime compensation, Plaintiff has been damaged in the loss of wages and has incurred and is incurring reasonable attorney's fees.

14.     Defendants  failure to pay overtime was deliberate, willful and without good faith or any legal justification.  Consequently, Plaintiff, is entitled to liquidated damages in an amount equal to the underpayment of overtime compensation, and may seeks recovery dating back three (3) years from the filing of this action.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages (unpaid overtime), liquidated damages (double damage) and attorneys' fees and court costs pursuant to the FLSA and for such other and further relief as this Court deems just and proper.

## Count II- Breach of Agreement (as to Acorn)

Plaintiff reavers and realleges paragraphs 1 through 10 as if fully set forth herein and further alleges:

15.     Plaintiff and Acorn entered into a written  agreement for Nall to be paid three months salary upon his termination.  Although his employment was terminated on or about

September 16, 2014, he was never paid three months salary as agreed.

16. In consideration of the performance of his services, Acorn agreed to pay certain compensation under the Agreement.

17. Acorn breached the agreement with Plaintiff by failing to pay him compensation including the three months salary owed upon termination.

18. By virtue of Acorn's breach of the agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Acorn for compensatory damages together with interest, court costs, attorneys' fees in accordance with Fla. Stat. § 448.08, and for any and all other and further relief this Court deems just and proper under the circumstances.

### Demand for Jury Trial

Plaintiff demands trial by jury on all issues so triable.

> Behren Law Firm
> 2893 Executive Park Drive, Suite 110
> Weston, FL 33331
> Phone: (954) 636-3802
> Facsimile: (772) 252-3365
> Scott@behrenlaw.com
>
>
> By:/ Scott M. Behren/
>   Scott M. Behren
>   Fla. Bar No. 987786



# Employment Agreement

16 Dec 2013

This Agreement by and between Will Nall hereinafter referred to as WN and Acorn Fine Homes hereinafter referred to as AFH shall apply as follows to WN whether compensated directly or indirectly through a payroll leasing company.

**Duties:** WN's duties shall consist of field supervision, construction and project management and administration, misc work task completion, and other duties as shall be directed by AFH.

**Continuing education:** AFH will continue to innovate and grow and each member of the management team is expected to continuously educate themselves and acquire new skills and abilities. Innovation and education is a continuous journey, not a destination. Accordingly, WN will engage in continuing education and professional development training as directed by AFH. These activities include but are not limited to, seminars, webinars, training classes, reading materials, youtube videos, consultations with vendor and supplier reps, self directed training programs, and college courses.

**Truck incentive:** AFH shall purchase an 03 Escalade EXT and accessories for WN's use as a work truck, titled in Les White/AFH and Will Nall's name or as subsequently retitled to WN with AFH as lien holder subject to the following buyout agreement. WN may purchase the truck from Les White/AFH after 36 months of continuous employment for $1 commencing 1 Dec 2013.

**Truck maintenance and operation:** WN shall maintain the company purchased truck in stock condition as follows: Keep the truck neat, clean, and reflective of the quality image of AFH. The truck shall be washed at least bi-monthly, detailed every 4 months, all periodic maintenance performed per owner's manual, brakes and tires kept in good working order and safe condition. These expenses shall be reimbursable by AFH including gas for work travel and oil. WN shall maintain auto insurance on the truck, drive and park defensively, refrain from distracted driving such as texting, and shall repair all damages as soon as practicable from a repair shop approved by AFH.

**Health maintenance:** Regular physical health checkups and maintenance are as important to a long and productive working career as periodic maintenance is to maximizing the useful life of a truck. Insofar as AFH is a non-smoking workplace WN shall continue to engage in a smoking cessation program until successful.

WN shall have annual physicals, skin checks by a licensed dermatologist, eye exams, bi-annual dental exam & teeth cleaning, and comply with all physicians recommendations and directives including but not limited to physical therapy as needed. WN shall refrain from using any type of tobacco product and shall aggressively enforce AFH's smoke free interior jobsite work zones. WN shall refrain from excessive consumption of alcohol, prescription and nonprescription or illegal drugs, and be careful to avoid any type of behavior that reflects negatively on AFH particularly around clients whether during business hours or after hours social occasions. Insofar as a field superintendent's job places him outdoors and exposed to the cumulative damaging and potentially life threatening effects of UV radiation WN shall employ skin protection

and cancer prevention methods including but not limited to annual skin checks, use of protective eyewear, clothing, head gear, and daily application of SPF 30 cream to exposed skin.

**Physical fitness:**  A fit and healthy body improves mental acuity and helps facilitate a positive mental attitude.  WN shall engage in a regular exercise program of his choice designed to maintain a physically fit and healthy body and maintain weight control in an effort to minimize health problems and maximize his personal effectiveness and representation of AFH.

**Personal appearance:**  WN shall maintain a neat, well dressed, and groomed appearance at work and especially when interacting with clients.

**Confidentiality:**  WN shall not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate in any manner any information that is proprietary to AFH.  WN shall protect such information and treat it as strictly confidential.  This proprietary information includes but is not limited to sales and marketing techniques, business systems, construction management techniques and systems, plans & specifications copyrighted by Les White Designs.

**Non-compete clause:**  WN agrees to not directly or indirectly engage in any business or employment with any business that competes with AFH for a period of one year within 50 miles of the AFH office at 4941 Soundside Drive, Gulf Breeze following voluntary or involuntary termination of his employment with AFH.

**Termination:**  Either party may terminate WN's employment with AFH with 2 weeks prior written notice.  If AFH terminates WN's employment then AFH shall continue to pay WN his regular monthly salary for a period of 3 months following notice of termination and the non-compete clause shall be amended to 6 months and 50 miles.

**Dissolution of AFH:**  In the event that AFH is closed or dissolved then the non-compete clause is automatically voided.  If AFH is closed because of the death of Les White then WN may have all company and Les White's personal tools and equipment including but not limited to trailers, the provided work truck, and all power and hand tools.  Additionally, WN shall be paid a lump sum of one year's salary to assist him in transitioning to the next phase of his working career.  In the event that WN dies before receiving any of the above defined benefits then these benefits shall be granted to his wife.

**Enforceability:** Both parties have attempted to limit the non-compete clause so that it applies only to the extent necessary to protect legitimate business and property interests.  If any provision of this agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable.  If a court finds than any provision of this agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

It is agreed that if WN violates the terms of this agreement irreparable harm will occur, and money damages will be insufficient to compensate AFH.  Therefore, AFH will be entitled to seek injunctive relief (i.e., a court order that requires WN to comply with the agreement) to enforce the terms of the agreement.  The prevailing party shall have the right to collect from the other party its reasonable costs and necessary disbursements and attorneys' fees incurred in enforcing this agreement.

This Agreement shall be governed by the laws of the State of Florida.

Will Nall:_____Date:_____

Les White:_____Date:_____

Witness: Alyssa Nall:_____Date:_____  Page 2 of 2